FILED

2016 NOV 10 AM 11:50

CLERK, US DIST COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DISTRICT

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RACHEAL ALVAREZ,

Plaintiff,

v.

CREDIT COLLECTION SERVICES,

Defendant.

_____/

CASE NO:

3:16 CV 1420-J-39 JRK

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Racheal Alvarez ("Racheal"), by and through counsel, brings this action against Defendant, Credit Collection Services ("CCS"), and states as follows:

## PRELIMINARY STATEMENT

1. This is an action for damages brought by an individual consumer based on CCS's alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, the Florida Consumer Collection Practices Act ("FCCPA"), Chapter 559, Florida Statutes, and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

## PARTIES

2. Racheal Alvarez, is a natural person who resided in Jacksonville, Florida, at all times relevant to this action.

-1-

3. Defendant, Credit Collection Services ("CCS"), is a Delaware corporation that maintained its principal place of business in Norwood, Massachusetts, at all times relevant to this action.

## JURISDICTION AND VENUE

4. Pursuant to 28 U.S.C. § 1331, this Court has federal question jurisdiction over this matter as it arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq. and the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

5. Pursuant to 28 U.S.C. §1367(a), this Court has supplemental jurisdiction over Racheal's claims under the Florida Consumer Collection Practices Act, Fla. Stat. ("FCCPA"), § 559.55, et seq., because those claims share a common nucleus of operative facts with Racheal's claims under the FDCPA. *See LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185 (11th Cir. 2010) ("[FCCPA's] remedies are 'cumulative to other sanctions and enforcement provisions' for any violation by an out-of-state consumer debt collector.").

6. Pursuant to 28 U.S.C. § 1391(b), venue is proper because a substantial part of the events giving rise to this claim occurred in this judicial district.

## STATEMENT OF FACTS

7. Before CCS began contacting Racheal, it and Racheal had no prior business relationship and Racheal had never provided express consent to CCS to be contacted on her cellular telephone.

8. CCS regularly uses instrumentalities of interstate commerce and the mails to collect consumer debts owed or due or asserted to be owed or due another.

9. The principal source of CCS's revenue is debt collection.

10. CCS is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

11. As described, *infra*, CCS contacted Racheal to collect a debt that was incurred primarily for personal, family, or household purposes.

12. This alleged obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

13. Racheal is a "consumer" as defined by 15 U.S.C. § 1692a(3).

14. Within the past twelve months, and before, CCS has been calling Racheal on her cellular phone ending in -1770 in connection with the collection of a debt.

15. Shortly after the calls began, Rachel communicated her desire that CCS cease calling her, and asked CCS to mail her information regarding the account rather than call her.

16. Despite this communication, CCS continued to call Racheal on her cellular phone.

17. On more than one occasion, CCS called Racheal on her cellular phone multiple times per day.

18. On September 21, 2015, Hyslip & Taylor, LLC, LPA ("H&T") sent a letter to CCS, which notified CCS of H&T's representation of Racheal.

19. Despite this notice, CCS continued to call Racheal on her cellular phone in connection with the collection of a debt, including but not limited to the following dates:
    - October 7, 2015
    - October 14, 2015
    - October 20, 2015
    - October 26, 2015
    - November 13, 2015

20. CCS's collection efforts, including but not limited to its continued and harassing telephone calls, caused Racheal emotional distress in the form of frustration, annoyance, aggravation, and anxiety.

21. CCS's collection efforts also intruded upon Racheal's privacy.

22. In addition, each time CCS placed a telephone call to Racheal, CCS occupied Racheal's telephone number such that Racheal was unable to receive other phone calls at that telephone number while CCS was calling her.

23. CCS's telephone calls also forced Racheal to lose time by having to tend to CCS's unwanted calls.

## COUNT ONE

### Violations of the Fair Debt Collection Practices Act

24. Racheal re-alleges and incorporates by reference Paragraphs 7 through 23 above as if fully set forth herein.

25. In order to establish a violation of Section 1692d of the FDCPA, a consumer need not prove intentional conduct by the debt collector. *See Hepsen v. Resurgent Capital Serv., LP*, 383 Fed. Appx. 877, 881 (11th Cir. 2010) (citations omitted).

26. Instead, [c]laims raised under § 1692d are 'viewed from the perspective of a consumer whose circumstances make her relatively more susceptible to harassment, oppression, or abuse.'" *See Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1179 (11th Cir. 1985). Additionally, intent may be inferred by showing the debt collector continued to call a debtor after the debtor asked not to be called.

27. Here, viewed from the perspective of the least sophisticated consumer, the natural consequence of CCS's debt collection activities was to harass, oppress, and/or abuse Racheal.

28. Additionally, Racheal personally felt harassed by CCS, and that CCS's actions toward her were abusive.

29. As a result, CCS's acts – including but not limited to continuing to call Racheal after she asked CCS to stop calling her and provide her with information regarding the debt via mail instead – violated 15 U.S.C. § 1692d by engaging in conduct the natural consequence of which is to harass, oppress, or abuse Racheal in connection with the collection of the debt.

30. CCS violated 15 U.S.C. § 1692c(a)(2) by continuing to call Racheal in connection with the collection of a debt after CCS knew that Racheal was represented by counsel with regard to the debt, and had knowledge of the name and address of Racheal's counsel.

31. CCS also violated 15 U.S.C. § 1692f by using unfair or unconscionable means to collect the debt, including its refusal to send Racheal information regarding the debt via mail and its continued collection calls to Racheal after she asked CCS to stop calling her and expressed to CCS that they were calling her too much.

## COUNT TWO
### Violations of the Florida Consumer Collection Practices Act

32. Racheal re-alleges and incorporates by reference Paragraphs 7 through 23 above as if fully set forth herein.

33. At all times relevant to this action, CCS is subject to and must abide by Florida law, including the FCCPA, Fla. Stat. § 559.72.

34. CCS is a "debt collector" as that term is defined in the FCCPA, Fla. Stat. § 559.55(7).

35. Racheal is a "consumer" as defined by the FCCPA and is a person whom the act was intended to protect, FCCPA, Fla. Stat. § 559.55(2).

36. CCS attempted to collect a "debt" within the meaning of FCCPA, Fla. Stat. § 559.55(1).

37. CCS willingly and knowingly violated Fla. Stat. § 559.72(7) by communicating with Racheal with such frequency as can reasonably be expected to harass Racheal or, or engaging in other conduct which can reasonably be expected to abuse or harass Racheal.

38. CCS willingly and knowingly violated Fla. Stat. § 559.72(18) by communicating with Racheal after CCS knew that Racheal was represented by an attorney and had knowledge of, or could readily ascertain, such attorney's name and address.

39. As a result of the above violations of the FCCPA, CCS is liable to Racheal for actual damages, statutory damages, and reasonable attorney's fees and costs, pursuant to Fla. Stat. §559.77(2).

40. Based upon the willful, intentional, knowing, malicious, repetitive and continuous conduct as described herein, Racheal is also entitled to an award of punitive damages in accordance with Fla. Stat. §§ 559.77 and 768.72.

## COUNT THREE

### Violation of the Telephone Consumer Protection Act

41. Racheal re-alleges and incorporates by reference Paragraphs 7 through 23 above as if fully set forth herein.

42. Senator Fritz Hollings, the original sponsor of the TCPA, stated:

> Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall.

137 Cong. Rec. 30,821 (1991).

43. The TCPA defines an automatic telephone dialing system ("ATDS") as "equipment which has the capacity...(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

44. "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

45. A predictive dialer is an ATDS within the meaning of the TCPA. *Smith v. MarkOne Fin., LLC*, 2015 U.S. Dist. LEXIS, *7-9 (M.D. Fla. Feb. 2, 2015); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 13, ¶ 13; *see also In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 F.C.C. Rcd. 14014, 14091-4093 (2003); *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 F.C.C. Rcd. 559, 562-63 (2008).

46. CCS used a predictive dialer to place calls to Racheal's cellular phone.

47. The TCPA provides, in part:

> (b) RESTRICTIONS ON THE USE OF AUTOMATED TELEPHONE EQUIPMENT.—
>
>> (1) PROHIBITIONS.—It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>>
>>> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
>>
>> * * *
>>
>>> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call…

47 U.S.C. §§ 227(b)(1)(A)(iii).

48. The term "called party," as used in Section 227(b)(1)(A) of the TCPA, refers to the subscriber or the regular user of the called number at the time the telephone call is made. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶¶ 72-73.

49. Racheal was the "called party" in each telephone call CCS placed to Racheal's cellular telephone.

50. The "called party" may revoke any prior consent to be called on his or her cellular phone in any reasonable manner. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961,7993, ¶ 55 (2015); *Brown v. Credit Mgmt., LP*, 131 F. Supp. 3d 1332, 1345 (N.D. Ga. 2015) ("The unwillingness [to receive calls] 'may be manifested to the actor by any words or conduct inconsistent with the continued consent.'").

51. CCS violated 47 U.S.C. § 227(b)(1)(A) on multiple and separate occasions by each time using an ATDS and/or an artificial or prerecorded voice to call Racheal on her cellular telephone without Racheal's prior express consent or after such consent had been revoked.

52. In addition, The TCPA provides, in part:

> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

47 U.S.C. § 227(b)(3).

53. The Communications Act of 1943, of which the TCPA is a part, defines "willful" as "the conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[], rule or regulation...." 47 U.S.C. § 312(f).

54. In order to establish a "willful" or "knowing" violation of the TCPA, a plaintiff need not demonstrate that the defendant intended to violate the statute, or that it knew or should have known it was violating the statute. *See Roylance v. ALG Real Est. Servs., Inc.* 2015 U.S. Dist. LEXIS 44930, *31 (N.D. Cal. Mar. 16, 2015); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310, *21-22 (N.D. Ill. Mar. 19, 2013); *Steward v. Regent Asset Mgmt. Solutions, Inc.*, 2011 U.S. Dist. LEXIS 50046, *18-20 (N.D. Ga. 2011).

55. Instead, a plaintiff need only show that the defendant engaged in a "voluntary act" that violated the TCPA. *See Bridgeview*, 2013 U.S. Dist. LEXIS, at *21-22; see also *Roylance*, 2015 U.S. Dist. LEXIS, at *31 (intentionally making phone calls that violated TCPA, without intent to violate the statute, was sufficient to warrant treble damages).

56. CCS voluntarily placed telephone calls to Racheal's cellular telephone number using an ATDS and/or an artificial or prerecorded voice.

57. CCS's violations of 47 U.S.C. § 227(b)(1)(A) were willfully and knowingly made.

## JURY DEMAND

58. Racheal demands a trial by jury.

## PRAYER FOR RELIEF

59. Racheal prays for the following relief:

    a. Judgment against CCS for actual damages, statutory damages, and costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k.

    b. Judgment against CCS for actual damages, statutory damages, costs and reasonable attorney's fees, plus punitive damages pursuant to Fla. Stat. § 559.77.

    c. An order enjoining CCS from placing further telephone calls to Racheal's cellular telephone number pursuant to 47 U.S.C. § 227(b)(3).

    d. Judgment against CCS for statutory damages pursuant to 47 U.S.C. § 227(b)(3) for each and every call CCS made in violation of the TCPA.

    e. For such other legal and/or equitable relief as the Court deems appropriate.

RESPECTFULLY SUBMITTED,

Date: November 9, 2016

By: /s/ *Sharina Romano*
Sharina T. Romano, Esq.
Florida Bar No.: 65501

HYSLIP & TAYLOR, LLC, LPA
1100 W. Cermak Road, Suite B410
Chicago, Illinois 60608
(P) 904-853-3050
(F) 312-361-3509
(E) sharina@fairdebt411.com
*Counsel for Plaintiff*